UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CITGO PETROLEUM CORP., ET AL.** | : | **DOCKET NO. 16-cv-1407** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; ET AL.** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion for Partial Dismissal [doc. 18] filed by Bridgestone Americas Tire Operations, LLC; Firestone Diversified Products, LLC; and Firestone Polymers, LLC (collectively, "defendants") in response to the complaint [doc. 1] filed by Citgo Petroleum Corporation, Occidental Chemical Corporation, and Oxy USA, Inc. (collectively, "plaintiffs").

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion for Partial Dismissal [doc. 18] be **DENIED**.

### I.
#### BACKGROUND

This suit concerns costs incurred by plaintiffs due to hazardous substances allegedly released or discharged into the Calcasieu Estuary, including at Bayou d'Inde. Doc. 1. Plaintiffs and defendants are past and present owners of petrochemical facilities located in the vicinity of Bayou d'Inde. *Id.* at 6–10. Plaintiffs allege that all the parties herein have been identified by government agencies as parties potentially responsible for the contamination of Bayou d'Inde, and that plaintiffs have incurred and will incur significant expense in responding to that contamination.

*Id.* at 10–24. Accordingly, they filed the instant suit, alleging that they "have incurred and will continue to incur response costs" as a result of the release/threatened release of hazardous substances into Bayou d'Inde from defendants' facility [*id.* at 25–26] and that they

> have incurred and will continue to incur response costs beyond their equitable share in compliance with an administrative settlement that has resolved their liability to the United States and the State of Louisiana for some or all of the response costs for the Bayou d'Inde site.

*Id.* at 28.

Plaintiffs allege that defendants are liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*, and state law, and request damages as well as declaratory and injunctive relief. *Id.* at 24–33. Specifically, they raise the following causes of action:

1. Cost recovery under CERCLA § 107(a)
2. Contribution under CERCLA § 113(f)(3)(B)
3. Declaratory judgment under CERCLA § 113(g)(2)
4. Abatement of private nuisance under Louisiana Civil Code article 667
5. Abatement of more burdensome natural servitude of drain under Louisiana Civil Code article 656

*Id.*

Defendants have filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of plaintiffs' first claim and their third claim, to the extent that the latter is predicated on a valid and underlying CERCLA § 107(a) cause of action, with prejudice. Doc. 18. Defendants maintain that, because plaintiffs have resolved their CERCLA liability to the United States and the state of Louisiana pursuant to an administrative settlement, as alleged under their second claim, plaintiffs' exclusive CERCLA remedy against defendants is a § 113(f) contribution action. Doc. 18, att. 2, pp. 1–2. Thus, they contend, plaintiffs fail to state a claim upon

-2-

which relief may be granted in their claims based on CERCLA cost recovery under § 107(a). *Id.* at 2. Plaintiffs oppose the motion. Doc. 23.

## II.
### LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of a plaintiff's claim for failure to state a claim for which relief may be granted. To survive such a motion, "the plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974). In other words, the plaintiff must provide enough factual allegations which, taken as true, raise his right to relief "above the speculative level." *Twombly*, 127 S.Ct. at 1965. The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether it is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## III.
### ANALYSIS

As stated above, defendants contend that, based on plaintiffs' representation that they have reached an administrative settlement with the state and federal government, they are foreclosed from asserting any claim against defendants based on CERCLA cost recovery, § 107(a), and that their CERCLA remedies are instead limited to contribution, § 113(f). Doc. 18, att. 2. They also maintain that plaintiffs have failed to properly assert their § 107(a) and § 113(f) claims in the alternative. Doc. 28. After reviewing the separate CERCLA causes of action at issue here, we first consider whether plaintiffs have properly asserted their claims, to the extent inconsistent, in the

-3-

alternative, and then whether they are permitted to do so. We will only address arguments as to whether § 107(a) claims and § 113(f) claims can be maintained simultaneously and consistently if we find that the claims were improperly or impermissibly raised in the alternative.

### A. CERCLA § 107(a) and § 113(f)

"CERCLA was enacted in 1980 as a broad remedial measure aimed at assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." *Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 242 (5th Cir. 1998) (quotations omitted). Its purpose, in other words, was not only "to facilitate the prompt cleanup of hazardous waste sites," but also to "shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm." *OHM Remediation Svcs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997). The statute accomplishes this goal through a bifurcated scheme, first with the creation of the Hazardous Substance Response Trust Fund, or Superfund, to provide funds to the federal government for waste site cleanup or the compensation of parties who have incurred response costs. *Uniroyal Chem. Co.*, 160 F.3d at 242. It also creates a right of action for private parties to recover their response costs. *3550 Stevens Creek Assocs. v. Barclays Bank of Calif.*, 915 F.2d 1355, 1357 (9th Cir. 1990).

Under CERCLA § 107(a), a party has "the right to bring a cost-recovery action against 'responsible persons' for costs associated with responding to an environmental threat." *Uniroyal Chem. Co.*, 160 F.3d at 242; *see* CERCLA § 107(a), as amended, 42 U.S.C. § 9207(a). To state a prima facie case for cost recovery, a plaintiff must show: (1) the site is a "facility;" (2) the defendant is a "responsible person;" (3) a release or threatened release of hazardous substances occurred; and (4) the release or threatened release caused the plaintiff to incur response costs. *Dune*

*Energy, Inc. v. Chevron U.S.A., Inc.*, 126 F.Supp.3d 688, 691–92 (E.D. La. 2015) (citing *Vine Street, LLC v. Borg Warner Corp.*, 776 F.3d 312, 315 (5th Cir. 2015)).

CERCLA § 113(f) provides for contribution from "any other person who is liable or potentially liable under section [107(a)]," and permits the court to "allocate response costs among liable parties using such factors as the court determines are appropriate." *OHM Remediation Svcs.*, 116 F.3d at 1579 (quoting 42 U.S.C. § 9213(f)). Under § 113(f)(3)(B), the statutory basis raised here:

> a "person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such an action in an administrative or judicially approved settlement make seek contribution from" a responsible party who has not settled.

*Differential Development-1994, Ltd. v. Harkrider Distributing Co.*, 470 F.Supp.2d 727, 738 (S.D. Tex. 2007) (quoting 42 U.S.C. § 9613(f)(3)(B)). The administrative or judicially-approved settlement is thus a prerequisite for liability under § 113(f)(3)(B). *See, e.g.*, *id.* at 739–43 (dismissing contribution claim because agreement did not qualify as administrative settlement for the purposes of § 113(f)(3)(B)).

Thus, as the Court emphasized in *United States v. Atlantic Research Corporation*, 127 S.Ct. 2331 (2007), CERCLA "§§ 107(a) and 113(f) provide two clearly distinct remedies" that "complement each other by providing claims to persons in different procedural circumstances." *Id.* at 2337–38 (internal quotations omitted).

### B. *Whether plaintiffs have properly pleaded their claims in the alternative*

Plaintiffs assert that they have permissibly pleaded alternative theories of relief through both cost-recovery claims under § 107(a) and a contribution claim under § 113(f). Defendants maintain that the claims at issue here were not properly identified as being raised in the alternative and that they are internally inconsistent, rendering the court under no obligation "to reconcile [or]

accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *U.S. Bank, N.A. v. Bank of Am., N.A.*, 2012 WL 6136017, *7 (S.D.N.Y. Dec. 11, 2012).

The Federal Rules of Civil Procedure expressly permit hypothetical and alternative pleading. FED. R. CIV. P. 8(d)(2)–(3). "Until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories." *Laurence v. Atzenhoffer Chevrolet*, 281 F.Supp.2d 898, 900 (S.D. Tex. 2003). As defendants concede, specific "magic words" are not required to signify that otherwise inconsistent claims are being raised in the alternative. Doc. 28, pp. 2–3; *e.g.*, *Fulcrum Credit Partners, LLC v. Chipmos Technologies, Inc.*, 2010 WL 11444280, *8 (W.D. Tex. Mar. 30, 2010). However, the pleadings must still give rise to a reasonable inference that this is what plaintiff intends to do. *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F.Supp.2d 387, 395 n. 11 (N.D.N.Y. 2013) (citing *G-I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 536 (S.D.N.Y. 2002)).

Defendants argue that the plaintiffs' § 107(a) claims are mutually inconsistent from their § 113(f) claim, and, as these claims were not identified as being raised in the alternative, the § 107(a) claims are now subject to dismissal. Plaintiffs maintain that any ambiguity in the pleadings on this front has been resolved in the ensuing briefing. Doc. 32, p. 3. To this end they rely on *Dune Energy*, supra, in which the Eastern District of Louisiana rejected a defendant's argument that plaintiff could not raise these same claims simultaneously as it had failed to clarify whether they were being raised in the alternative.[1] 126 F.Supp.3d at 691 n. 3. The court noted that it "[appreciated] Defendant's technical notation," but declined to require any amendment to state whether the claims

---

[1] Defendants attempt to distinguish *Dune Energy* by pointing out that the court there, "out of an abundance of caution," allowed plaintiff to amend its complaint as to its § 113(f) claim – namely, to allege whether an administrative order had been issued to govern its actions in the cleanup – and that plaintiff ultimately dropped the § 113(f) claim from its amended complaint. Doc. 28, p. 6 (citing *Dune Energy*, 126 F.Supp.3d at 696). This distinction has no bearing on the court's willingness, as shown supra, to let the § 113(f) and § 107(a) claims proceed without requiring amendment for an explicit statement that they were being raised in the alternative.

were being raised alternatively and instead construed the pleadings as having been raised as such to the extent necessary.[2] *Id.*

We agree with the course taken by the Eastern District. Plaintiffs are permitted to raise their claims in the alternative, and it is clear from their opposition to this motion that they intend to do so to the extent that these remedies are mutually exclusive or otherwise inconsistent. It is also clear from defendants' reply [doc. 28] that the defendants understand that intent. To order plaintiffs to amend at this point would be a waste of the time and resources of everyone involved.

### C. *Whether plaintiffs have permissibly raised their claims in the alternative*

Defendants contend that, even if the § 107(a) and § 113(f) claims are construed as raised in the alternative, the § 107(a) claims are nonetheless impermissibly raised because § 113(f) is plaintiffs' exclusive remedy due to its administrative settlement. Plaintiffs maintain that their allegation in the § 113(f) claim, pointing to the existence of an administrative settlement, cannot be used by defendants as an admission in order to negate their cause of action under § 107(a). They argue that determining whether an administrative settlement exists that would trigger a § 113(f) claim is a fact-intensive inquiry requiring examination of evidence beyond the pleadings, making resolution of the question inappropriate for a § 12(b)(6) motion.

Although allegations in a plaintiff's complaint may generally be used by a defendant as admissions, a defendant "may not use allegations related to one claim as evidence to invalidate an alternative claim." *Well Fargo Bank, N.A. v. Guevara*, 2010 WL 5824040, *3 (N.D. Tex. Aug. 18, 2010) (quoted in *Fowler v. U.S. Bank, N.A.*, 2 F.Supp.3d 965, 979–80 (S.D. Tex. 2014); *see also*

---

[2] The court went on to note, as plaintiffs point out, that the mutual exclusivity of these claims was not as black-and-white as defendant might represent. 126 F.Supp.3d at 691 n. 3. It remarked that the Supreme Court had stated in *Atlantic Research*, supra, "that in certain grey areas it is an open question as to whether incurred costs might be 'recoverable under § 113(f), § 107(a), or both.'" *Id.* (quoting *Atlantic Research*, 127 S.Ct. at 2338 n. 6).

*Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (same); *McCalden v. Calif. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (same).

Here the allegation that any administrative action or agreement is a settlement triggering § 113(f)(3)(B) liability was only made under the plaintiffs' second claim. *See* doc. 1, p. 28, ¶ 101. As we found supra, the plaintiffs' claims based on § 107(a) can be construed as raised in the alternative to their second claim, which is based on § 113(f)(3)(B). Thus, the allegation of an administrative settlement under the latter claim may not be used to undermine the plaintiffs' ability to state a claim with respect to the former.

Determining whether an agreement is an administrative settlement triggering liability under § 113(f)(3)(B) is a fact-bound inquiry. *See, e.g.*, *Exxon Mobil Corp. v. United States*, 108 F.Supp.3d 486, 509–11 (S.D. Tex. 2015) and *Differential Dev.*, 470 F.Supp.2d at 738–43 (S.D. Tex. 2007) (analyzing, respectively, whether two administrative consent orders and a voluntary cleanup agreement were administrative settlements triggering liability under § 113(f)(3)(B)); *see also* A. Luria, *CERCLA Contribution: An Inquiry Into What Constitutes an Administrative Settlement*, 84 N.D. L. REV. 333, 341–52 (2008). Defendants contend that the facts are well-known in this case, in reliance on the length of the complaint and the number of years that the Calcasieu Estuary has been under regulatory scrutiny. Doc. 28, p. 5. However, as plaintiffs point out, the complaint points to multiple agreements executed in connection with the clean-up work at Bayou d'Inde. Doc. 32, p. 2; *see* doc. 1, pp. 15–24. No discovery has taken place and no agreement is attached to the complaint. Doc. 32, pp. 2–3. Determination of whether an agreement relating to this matter is an administrative settlement under § 113(f)(3)(B) thus falls outside of the scope of the instant motion and is more properly considered, as the issue was in *Exxon*, on a motion for summary judgment. Accordingly, the alleged existence of a settlement triggering § 113(f)(3)(B)

liability cannot be used to invalidate any other claims, to the extent inconsistent, in the instant motion.[3]

### IV.
#### CONCLUSION

Plaintiffs have properly and permissibly pleaded their claims, to the extent inconsistent, in the alternative. Defendants show no other grounds for dismissal under Rule 12(b)(6). Accordingly, **IT IS RECOMMENDED** that the Motion for Partial Dismissal [doc. 18] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 16th day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

---

[3] At this stage we do not reach the issue of whether the existence of such a settlement triggering § 113(f)(3)(B) liability would definitively exclude any § 107(a) claims, as defendants argue in reliance on *Exxon*, supra, or whether there might be "certain grey areas" applicable in this case where costs could be recoverable under both § 113(f) and § 107(a). *Dune Energy*, 126 F.Supp.3d at 691 n. 3 (citing *Atlantic Research*, 127 S.Ct. at 2338 n. 6).